# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARLESS C. HUDSON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 05 C 6783 |
| DEUTSCHE BANK AG, et al., | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Arless Hudson and the ACH Sunrise Trust (collectively "Plaintiffs"), filed suit in the Circuit Court of Cook County alleging that the defendant professional advisors provided her improper and fraudulent tax counseling.[1] At issue is Hudson's participation in a tax shelter strategy based on the purchase of foreign currency options. This strategy, allegedly designed, marketed and executed by Defendants, resulted in Hudson being audited by the IRS and paying substantial interest and penalties.

Defendants Deutsche Bank AG and Deutsche Bank Securities ("Deutsche Bank") removed this case to federal court. Subsequently, Deutsche Bank, Craig Brubaker and David Parse ("the DB Defendants") and Defendant White and Case filed motions to compel arbitration and to stay the proceedings pursuant to the Federal Arbitration Act, ("FAA"), 9 U.S.C. *et seq*. Defendants J.P. Morgan Chase & Co., J.P. Morgan Chase Bank and J.P. Morgan Investment Advisors, Inc. ("JP Morgan") and Matthew Colnon, Scott Deichman, John Ohle III and Jeffrey Conrad ("former Bank

---

[1] Plaintiff brought claims for breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, fraud, negligent misrepresentation, negligence, civil conspiracy and violation of the Consumer Fraud and Deceptive Business Practices Act.

One Employees") (together "the JP Morgan Defendants")[2] filed a motion to stay these proceedings pending arbitration of Plaintiffs' claims against the DB Defendants and pending the resolution of a class action against the DB Defendants and other individuals and entities involved in the design, marketing and execution of the tax shelter strategy.

Since the filing of Defendants' motions, this Court granted Plaintiffs' Motion to Dismiss With Prejudice the DB Defendants and White and Case. The sole issue therefore is whether the JP Morgan Defendants are entitled to a stay of these proceedings. Because the claims against the JP Morgan Defendants are not parallel to the impending arbitration or the pending class action, no exceptional circumstances warrant abstention and the doctrine of equitable estoppel is not applicable to the JP Morgan Defendants' request for a stay, this Court declines to stay the exercise of its jurisdiction.

**Plaintiffs' Allegations**

In 2001, Hudson realized a substantial gain from the sale of a family business. (Compl. ¶ 52.) In October of 2001, Colnon of Bank One contacted Hudson's advisor, Ron Comm, regarding a tax strategy that he believed could reduce her tax liability from the sale. (*Id.*) Colnon urged Comm to meet with representatives of Deutsche Bank and Bank One to discuss the strategy. (*Id.*) Hudson's advisor, Wayne Cooper, and Hudson's son, Craig Hudson, met with Ohle, Deichmann and Conrad of Bank One to discuss the details of the so-called HOMER tax strategy. (*Id.* at ¶ 53.) The HOMER strategy creates a tax deduction for an individual by using loans to purchase two partially offsetting European-style digital foreign currency options, and then moving the funds through a trust and limited partnership. (*Id.* at ¶ 63.) The individual records a significant "loss" from this transaction

---

[2] Banc One Investment Advisors Corporation merged into and was succeeded by JP Morgan Chase & Co. effective on or about July 1, 2004.

2

that can be offset against the individual's potential tax liability, but he or she suffers no (or a relatively small) actual economic loss. (*Id.*) The HOMER strategy was quite similar to the COBRA strategy that the DB Defendants and Paul Daugerdas of the law firm Jenkens & Gilchrist developed in the mid-to-late 90s. (*Id.* at ¶ 28.) The IRS issued two Notices in 1999 and 2000 which described the transactions involved in the COBRA strategy and declared that "[t]he purported losses from these transactions (and from any similar arrangements designed to produce non-economic tax losses by artificially overstating basis in partnership interest) are not allowable as deductions for Federal income tax purposes." (*Id.* at ¶ 36, quoting IRS Notice 2000-44.)

In January 2001, Trey Die of Bank One approached Daugerdas about a transaction called BART that Bank One had developed. (*Id.* at ¶ 41.) BART, like COBRA, was designed to increase a taxpayer's basis in an asset without the taxpayer actually incurring any economic loss. (*Id.* at ¶ 42.) Over the next couple of months, Daugerdas, Bank One, the DB Defendants and White and Case further refined the BART strategy. (*Id.* at ¶ 43.) The new strategy was given the name HOMER in reference to BART and the popular "Simpsons" television show. (*Id.* at ¶ 44.)

Conrad, Ohle and Deichmann assured Hudson's representatives that the HOMER strategy already had survived IRS scrutiny. (*Id.* at ¶¶ 54, 88.) They also told Hudson's representatives that HOMER was a propriety strategy of Bank One offered only to select clients. (*Id.* at ¶ 54.) Conrad, Ohle and Deichmann then referred Hudson's representatives to Daugerdas, whom Hudson's representatives were told would prepare an independent opinion letter that would insulate Hudson from penalties in the unlikely event of an IRS audit. (*Id.*) In November 2001, the former Bank One employees and Daugerdas set up a phone call with the DB Defendants. (*Id.* at ¶ 58.) The DB Defendants confirmed the legitimacy of the HOMER strategy and specifically discussed the options

3

of German bonds that were involved. (*Id.*) After agreeing to participate in the tax strategy, Hudson executed an Account Agreement with Deutsche Bank on November 17, 2001. The Account Agreement contained the following arbitration agreement:

> I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to a jury trial . . .
>
> I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of nay agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election.
>
> Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

(*Id.*, Ex. 1, 2.) On or about November 20, 2001, Hudson, through the ACH Trust formed to carry out the HOMER strategy, entered into four private contracts with Deutsche Bank involving foreign options positions on German Government Bonds. (*Id.* at ¶¶ 69, 71.) Over the next month, the Options were passed through a series of trusts and partnerships with proceeds in the amount of $103,545,553.83 eventually being paid to Hudson. (*Id.* at ¶¶ 71-83). The strategy was completed on December 21, 2001 when Hudson repaid Deutsche Bank $103,545,553.83, the amount of the loan used to purchase the positions. (*Id.* at ¶ 83.)

In March 2004, Jenkens & Gilchrist notified Hudson that they, or another promoter of the HOMER strategy, likely would disclose her participation in the strategy to the IRS. (*Id.* at ¶ 94.) Hudson amended her 2001 tax returns on March 23, 2004. (*Id.* at ¶ 95.) Shortly thereafter, the IRS audited her 2001 tax return. (*Id.*) In early 2005, Hudson accepted a settlement offer from the IRS and paid the IRS and State of Illinois back taxes as well as approximately $3 million in interest and penalties. (*Id.* at ¶¶ 102-103.) In 2002, the IRS had offered the "Tax Amnesty Program," a voluntary disclosure program for individuals and entities that participated in tax strategies like the HOMER strategy. (*Id.* at ¶ 93.) Under the Amnesty Program, taxpayers who disclosed their involvement in such strategies would avoid any penalties without conceding liability for back taxes or interest. (*Id.*)

In addition to this suit, a class action involving the same tax shelter strategy is pending in the Southern District of New York. *See Denney v. Jenkens & Gilchrist*, No. 03 C 5460 (S.D.N.Y). Plaintiffs are members of several putative classes in *Denney*, including a class that reached a settlement with Jenkens & Gilchrist. The JP Morgan Defendants are not named in the *Denney* action. Deutsche Bank appealed the district court's approval of the settlement class based upon two provisions of the settlement agreement that allegedly impacted the rights of non-settling defendants. The Second Circuit vacated the settlement and remanded on those limited issues. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 276 (2d Cir. 2006). A separate appeal addressing the district court's denial of Deutsche Bank's motion to stay the proceedings pending arbitration has been argued and is waiting an opinion from the Second Circuit. In addition to the *Denney* class action, there are a number of cases, such as this one, asserting individual claims against the various entities and individuals allegedly involved in creating, marketing and implementing the tax shelter strategy.

5

**Discussion**

When a court determines that a dispute falls within the scope of an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."[3] 9 U.S.C. § 3. Section 3's mandatory stay does not apply, however, when the parties involved are not both signatories to the arbitration agreement. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). The JP Morgan Defendants are not signatories to the arbitration agreement between Deutsche Bank and Hudson. Under such circumstances, "[p]arallel proceedings, one judicial, one arbitral are governed . . . by the normal rules for parallel-proceeding abstention." *Id.* The JP Morgan Defendants argue that principles of abstention and equitable estoppel support a stay of this action against them.

**I.     Abstention**

The JP Morgan Defendants ask this Court to stay its current proceedings until the completion of the Deutsche Bank arbitration and the *Denney* class action. The *Colorado River* abstention doctrine applies when a party seeks to stay a federal case in light of an action proceeding in another forum. *See Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800 (1976). Typically, the alternative forum is a state court, a forum to which federal courts owe "a special obligation of comity." *AAR Int'l v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). But even where the alternative forum is not a state court, the same general principles apply. *Id.* The doctrine's first requirement is that the parties and issues in the separate proceeding parallel the federal action. *See*

---

[3] If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989). If the proceedings are parallel, a federal court still must find that exceptional circumstances exist before it will stay the exercise of its jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983) ("[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction"). Two things influence greatly the determination as to whether the Deutsche Bank arbitration and *Denney* class action are parallel to this action and whether exceptional circumstances exist which would justify abstention: first, the JP Morgan Defendants are not a defendant in the *Denney* class action and they are not asking to have Plaintiffs' claims against them arbitrated in the Deutsche Bank arbitration and, second, the validity of the tax shelter strategy will not be a strongly disputed or dispositive issue in adjudicating the JP Morgan Defendants' liability on the claims in this case.

A.  **Parallel Proceedings**

The separate proceedings must be parallel, not identical. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). Two proceedings are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir. 1979). "Parties with 'nearly identical' interests are considered 'substantially the same' for *Colorado River* purposes." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). The issues are sufficiently the same when there is a "substantial likelihood that the [other proceedings] will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1986).

7

The same parties are not litigating in separate fora. Plaintiffs are members of the settlement class certified against Jenkens & Gilchrist and several other putative classes in the *Denney* litigation. According to the terms of the arbitration agreement that Hudson signed with Deutsche Bank, she is bound to arbitrate any controversy arising from Deutsche Bank's management of her account. An additional provision, however, prevents Deutsche Bank from compelling arbitration while Hudson "is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court." Hudson attempted to take advantage of this loophole by filing the individual claims in this case while *Denney* class action was pending. On this point, the Court agrees with Judge Castillo's conclusion in a similar case that although the claims are not currently subject to arbitration, a stay of any lawsuit bringing individual claims against the DB Defendants is appropriate. *See Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 730 (N.D. Ill. 2006) ("In the absence of a stay of litigation, Deutsche Bank's right to arbitrate will be effectively nullified"). The JP Morgan Defendants are not named in the *Denney* class action nor do they argue that they will be parties to the Deutsche Bank arbitration proceedings.

The separate proceedings need not have identical parties to be parallel. *See Clark*, 376 F.3d at 686 ("The addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings"); *AAR Int'l*, 250 F.3d at 518 ("[T]he mere presence of additional parties or issues in one of the case will not necessarily preclude a finding that they are parallel"). Nonetheless, the stay movant is almost always one of the parties in each proceeding. If not a party, the movant must have nearly identical interests to a party in the separate proceeding. *See Clark*, 376 F.3d at 686. Parties have been found to share nearly identical interests when they have a common economic identity. *See id.* at 686 (true party in interest in both suits was Sears, not the

individual interests of the plaintiffs who brought the derivative shareholder suits); *Caminiti & Iatarola v. Behnke Warehousing Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992) (estate and business were same parties where the estate owned one-fourth of the business); *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (shareholders and corporation were substantially the same party); *Nakamura Trading Co. v. Sankyo Corp.*, 2006 WL 1049608, *5 (N.D. Ill. 2006) (defendant Sankyo was a shareholder in company involved in an arbitration of the same issues). The JP Morgan Defendants do not share such a common identity or interest with the parties in the arbitration or class action.[4] As such, the JP Morgan Defendants are not substantially the same party as any of the defendants in the separate proceedings.

### 2. Similarity of Issues

The necessary similarity of issues between the separate proceedings also is absent. The JP Morgan Defendants argue that the other proceedings are certain to resolve the key legal issues in this case including the validity of the tax opinion provided by Jenkens and the transactional structure executed by Deutsche Bank and/or White and Case. Resolution of these issues, however, is not likely to dispose of all of the claims presented in this case. *See Day*, 862 F.2d at 656 (issue presented in the federal claim would be disposed of in the state litigation, regardless of which party prevailed

---

[4] Each defendant has a common interest in having the foreign currency options tax shelter strategy found valid, but that is where the defendants' shared interests end. At that point, each defendant has an interest in blaming the other defendants for the transaction. Case in point, the JP Morgan Defendants downplay their own role in the scheme while accentuating the conduct of the other actors. While Plaintiffs allege that the JP Morgan Defendants (Bank One) developed the BART strategy, were involved in refining it into the HOMER strategy and marketed it to Hudson as its own proprietary strategy, the JP Morgan Defendants describe themselves as primarily "a point of introduction and facilitator for Hudson's interactions with other professionals." The JP Morgan Defendants then contrast this passive role with the fact that Jenkens provided the legal opinion on the tax implications of the transaction, Deutsche Bank executed the options strategy and White and Case examined the legal mechanics of the option trades.

9

in the state case). Given the IRS' prior notices on validity of the tax shelter strategy, the issue is not likely to be in substantial dispute. Instead, the JP Morgan Defendants' liability will turn more on their role in creating and selling the plan to Hudson. In the unlikely event that the tax structure is valid, certain of Plaintiffs' claims go beyond the validity of the HOMER tax structure. Plaintiffs' claims also include whether the JP Morgan Defendants charged her excessive fees and whether they failed to disclose or misrepresented the existence of the Amnesty Program and other material facts. *See AAR Int'l*, 250 F.3d at 520 (stay not warranted where other claims would remain unresolved by separate proceeding). Equally important, any rulings on validity of the tax shelter strategy should not have a preclusive effect in this litigation because of the lack of identity between the parties. *See Luman*, 780 F.2d at 695-96 ("In the present case . . . one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court. Principles of res judicata can be expected to operate in full force . . ."); *Liebert Corp. v. Mazur*, 2004 WL 2095666, *2 (N.D. Ill. 2004) ("[R]esolving the state case on its merits would likely preclude continuing with the federal lawsuit based on the *res judicata* effect of the state lawsuit").

The JP Morgan Defendants have not demonstrated that this action involves substantially the same parties or issues as the impending arbitration or the *Denney* class action. Accordingly, a stay cannot be granted under *Colorado River* abstention. *See AAR Int'l,* 250 F.3d at 520 (noting that "any doubt regarding the parallel nature of the [separate] suit should be resolved in favor of exercising jurisdiction").

### B. Exceptional Circumstances

Even if the suits were parallel, their circumstances are not so exceptional as to justify a stay. The non-exhaustive list of factors that might establish "exceptional circumstances" includes:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Clark*, 376 F.3d at 685. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. In exercising its discretion, this Court must "balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999); *see Schneider Nat'l Carriers v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990) ("The weight to be given any one factor is determined solely by the circumstances of the particular case-there is no mechanical formula by which to determine when a stay is appropriate").

The JP Morgan Defendants cite the desirability of avoiding piecemeal litigation as the factor weighing most heavily in favor of a stay. The issue of the validity of the tax shelter strategy will be addressed in any proceeding related to it. Also, Plaintiffs have alleged that the various financial and legal advisors acted in concert to defraud them. The overlap of issues between separate proceedings, however, does not always amount to extraordinary circumstances. *See Colorado River*, 424 U.S. at 816 ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction"); *Schneider Nat'l Carriers*, Inc., 903 F.2d at 1158 (having two active lawsuits instead of one is not enough to justify abstention). This is not a case

where the tail will be wagging the dog. Plaintiffs have alleged that the JP Morgan Defendants played a central role in developing the HOMER tax strategy and marketing it to her. The liability of the JP Morgan Defendants' is not derivative of Deutsche Bank or Jenkens & Gilchrist or determined completely by whether the tax strategy is valid. Consequently, significant issues distinct to the JP Morgan Defendants will need to be resolved in deciding Plaintiffs' claims.

The JP Morgan Defendants next argue that the other proceedings will adequately protect Plaintiffs' rights. On this point, the JP Morgan Defendants point to the strong federal policy in favor of arbitration. *See, e.g., Aggrow Oils, LLC v. Nat'l Union Fire Insur. Co. of Pittsburgh, PA*, 242 F.2d 777, 782 (8th Cir. 2001) ("[A] discretionary stay may well be needed to further the strong federal policy favoring agreement to arbitrate"); *Olson*, 461 F. Supp. 2d at 730 (granting stay to protect defendant's right to arbitration). As the JP Morgan Defendants describe how Plaintiffs' rights will be protected by the other actions, what becomes evident is that the JP Morgan Defendants are not a party to any of the other actions. Thus, while Plaintiffs may have their rights vis-a-vis Jenkens & Gilchrist or Deutsche Bank adequately redressed in the other actions, the other actions do not provide a potential remedy for the alleged conduct of the JP Morgan Defendants. Along the same lines, given the fact that the JP Morgan Defendants have not asserted a right to have Plaintiffs' claims against them arbitrated, declining to stay this case will not offend the federal policy in favor of arbitration. *See Wilson et al. v. Deutsche Bank et al.*, No. 05 C 3474 (N.D. Ill. March 20, 2006) (Gettleman, J.) (granting stay after finding that each defendant had a right to arbitrate the plaintiffs' claims against them).

A third factor to be weighed in making the stay determination is the "vexatious or contrived nature of the federal claim." As this suit pertains to the DB Defendants, it certainly attempts to do

an end-run around Plaintiffs' obligation to resolve their dispute through either arbitration or a class action. As to the DB Defendants, this Court agrees with Judges Gettleman and Castillo that Plaintiffs should not be permitted to pursue claims outside of a class action or arbitration. Again though, JP Morgan Defendants are not contending that the claims against them are subject to arbitration and they are not defendants in the *Denney* class action. Likewise, this case does not fall in the class of vexatious cases where Plaintiffs could have brought all parties and all claims in one action. *See Interstate Material Corp.*, 847 F.2d at 1289; *Lumen Constr., Inc.*, 780 F.2d at 696. Plaintiffs have not brought any separate action based upon alleged harm caused by Hudson's participation in the HOMER tax strategy. Ultimately, absent this individual suit, there is no alternative forum where Plaintiffs can seek relief from the JP Morgan Defendants.

The claims in this action, the *Denney* class action and the Deutsche Bank arbitration all stem from generally the same tax shelter strategy. Of the factors, the desirability of avoiding piecemeal litigation does weigh in favor of a stay, but "[i]n the end, this case turns on how seriously we take the admonition from the Supreme Court not to stay or dismiss actions without strong justification to do so." *AXA Corp. Solutions v. Underwriters Reinsur. Corp.*, 347 F.3d 272, 279 (7th Cir. 2003). "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the *complete and prompt* resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l*, 250 F.3d at 518 (internal quotations omitted). The Deutsche Bank arbitration and *Denney* class action are not likely to provide Plaintiffs a complete and prompt resolution of their claims against the JP Morgan Defendants. First of all, the JP Morgan Defendants are not a party to either proceeding. Additionally, although issues related to the tax shelter strategy may be resolved in the

*Denney* class action or Deutsche Bank arbitration, this resolve will not dispose completely of the issues between Plaintiffs and the JP Morgan Defendants. Issues as to both the JP Morgan Defendants' liability for their alleged role in developing and marketing the strategy and as to other claims not tied specifically to the validity of the tax strategy will remain. Neither will the resolution be prompt. The arbitration process cannot even begin until a class certification decision has been made in the *Denney* case. *See Olson*, 461 F. Supp. 2d at 730 ("The arbitration agreement between Deutsche Bank and Plaintiffs unambiguously states that the arbitration agreement shall not be enforced *until* Plaintiffs are excluded from the class action by the court"). Since it is unlikely that the *Denney* class action or Deutsche Bank arbitration will provide a complete and prompt resolution of Plaintiffs' claims against the JP Morgan Defendants, it would be an abuse of discretion to stay this case.

## II. Equitable Estoppel

The JP Morgan Defendants argue that principles of equitable estoppel should compel this Court to stay its proceedings. As support, the JP Morgan Defendants rely on precedent allowing a non-signatory to an arbitration agreement to compel arbitration "when the signatory relies on the terms of the written agreements in asserting its claims against the nonsignatory, and when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 786, 882 (N.D. Ill. 2006); *see Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) ("A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause"). This is an equitable exception to the general rule that "a party cannot be required to submit a dispute to

arbitration which he has not agreed to submit." *Zurich Am. Ins. Co.*, 417 F.3d at 687; *see Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (identifying assumption, agency, estoppel, veil piercing, and incorporation by reference as five ways a nonsignatory can be bound to arbitrate). These cases do not apply anywise and the JP Morgan Defendants have not provided any precedent or explanation as to why this test should be extended to determine the propriety of a stay. The abstention doctrine deals specifically with when a federal court should stay the exercise of its jurisdiction because of a pending arbitral proceeding. Where that abstention doctrine does not warrant a stay, the Court sees no reason to apply a test developed to address an entirely separate concern.

**Conclusion**

The JP Morgan Defendants have not demonstrated that the *Denney* class action or the Deutsche Bank arbitration is parallel to this proceeding. Nor have they established a clear justification for this Court to stay the exercise of its jurisdiction over the matter. Accordingly, abstention is not warranted. Finally, the equitable estoppel precedent that the JP Morgan Defendants cited is inapposite. Wherefore, the JP Morgan Defendants' Motion for Stay Pending Arbitration is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 30, 2007